UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| CATINA WINFIELD LANEHART | CIVIL ACTION |
|---|---|
| VERSUS | NO. 17-78-RLB[1] |
| COMMISSIONER OF SOCIAL SECURITY | |

**RULING ON PLAINTIFF'S SOCIAL SECURITY APPEAL**

Catina Winfield Lanehart ("Plaintiff") seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for Disability Insurance Benefits under the Social Security Act. (R. Doc. 1). Having found all of the procedural prerequisites met (Tr. 1-6), the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you… file an action in Federal district court…"). For the reasons given below, the Court **ORDERS** that the decision of the Commissioner is **AFFIRMED** and Plaintiff's appeal is **DISMISSED with prejudice**.

## I. PROCEDURAL HISTORY

Plaintiff filed her application for disability insurance benefits (Tr. 120-26) on September 3, 2014, alleging that she became disabled on August 13, 2014 because of a disabling condition, namely vision problems, neuropathy, high blood pressure, diabetes, and high cholesterol. (Tr. 141). Plaintiff's application was initially denied by an Administrative Law Judge ("ALJ"), who

---

[1] Because both parties consented to proceed before a United States Magistrate Judge (R. Doc. 14), the case was transferred to this Court for all further proceedings and entry of judgment pursuant to 28 U.S.C. § 636(c)(1).

first held an administrative hearing (Tr. 28-61) before issuing an unfavorable decision on December 1, 2015. (Tr. 12-25). Plaintiff's request for review of the ALJ's decision (Tr. 6) was denied by the Appeals Council on October 11, 2017. (Tr. 1-5). The ALJ's decision rested as the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981.

## II. STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The Court may not reweigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g., Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is

less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("In applying the substantial evidence standard, we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's."); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If, on the other hand, the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III. ALJ'S DETERMINATION

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he or she is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities…" 20 C.F.R. § 404.1520(c). At step three, the ALJ must conclude the claimant is disabled if he or she proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1

(Listing of Impairments). Fourth, the claimant bears the burden of proving he or she is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ made the following determinations:

1. Plaintiff did not engage in substantial gainful activity since September 3, 2014.

2. Plaintiff had the following severe impairments: diabetes mellitus, peripheral neuropathy, degenerative disc disease of the lumbar spine, hypertension, diabetic retinopathy, bilateral carpal tunnel syndrome, and obesity.

3. Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings.

4. Plaintiff had the residual functional capacity to perform light work, with occasional lifting/carrying of up to 20 pounds, frequent lifting/carrying of up to 10 pounds, sitting for up to 6 hours total during an 8-hour workday, standing and/or walking for up to 6 hours total during an 8-hour workday, and she can occasionally climb ladders, scaffolds, ropes, ramps, and stairs, occasionally balance, stoop, kneel, crouch, and crawl, cannot perform work requiring binocular vision, should avoid exposure to concentrated extremes of heat and cold, as well as concentrated exposure to dangerous machinery and unprotected heights, and can perform frequent bilateral handling and fingering.

5. Plaintiff had no past relevant work.

6. Plaintiff was born on August 14, 1972 and was 42 years old, which is defined as a younger individual age 18-49, on the date the application was filed.
7. Plaintiff had at least a high school education and is able to communicate in English.

8. Transferability of job skills was not an issue because she did not have past relevant work.

9. Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

10. Plaintiff was not under a disability since September 3, 2014.

## IV. DISCUSSION

Plaintiff advances four assignments of errors in support of his position that the ALJ's decision denying Social Security benefits should be reversed. First, Plaintiff asserts that the ALJ filed to incorporate her severe carpal tunnel syndrome into the RFC assessment. (R. Doc. 18 at 4-8). Second, Plaintiff argues that substantial evidence does not support the ALJ's finding that she could stand and/or walk 6 hours out of an 8-hour workday. (R. Doc. 18 at 8-10).

### A. RFC – Bilateral Carpal Tunnel Syndrome

In support of her argument that the ALJ's failure to incorporate her severe carpal tunnel syndrome into her RFC was not based on substantial evidence, Plaintiff suggests that the ALJ failed to consider and/or discuss the factors found in 20 C.F.R. §§ 404.1529(c) and 416.929(c) in the context of her "manipulative limitations and/or bilateral handling and fingering." (R. Doc. 18 at 5). Plaintiff also asserts that the ALJ committed error when he found that no "reason to believe that [her carpal tunnel syndrome] will not be amenable to appropriate treatment." (R. Doc. 18 at 7; R. Doc. 19). The Commissioner responds that the ALJ's limiting of Plaintiff to frequent bilateral fingering and handling properly considered the step 2 finding of severe carpal tunnel syndrome. (R. Doc. 22 at 8). The Commissioner also argues that the ALJ is within in his authority in considering the potential for treatment curing an impairment or its resulting functional limitations when assessing a claimant's RFC, or in the alternative, that the Appeals Council's denial of Plaintiff's request for review cures any error the ALJ made in concluding

that Plaintiff's carpal tunnel syndrome could "be amenable to appropriate treatment." (R. Doc. 22 at 10-11).

The ALJ found Plaintiff's bilateral carpal tunnel syndrome severe at step 2 of the sequential evaluation process. (Tr. 14). Having concluded Plaintiff did not meet or medically equal a listing, the ALJ then addressed Plaintiff's residual functional capacity, finding Plaintiff could perform "frequent bilateral handling and fingering." (Tr. 15). The ALJ referenced Plaintiff's testimony at the administrative hearing that she cannot open jars, or cut hair, that she drops things, and that she is scheduled to see a specialist regarding her carpal tunnel syndrome. (Tr. 16). The ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms not entirely credible, noting no evidence of related acute clinical findings. (Tr. 19). The ALJ also found the RFC supported by the "weight of the medical evidence and the credible indications of the claimant's activities of daily living." (Tr. 20).

"A claimant's RFC is 'the most [a claimant] can do despite [her] limitations.'" *Vaugh v. Colvin*, 589 Fed. App'x 238, 242 (5th Cir. 2014) (citing 20 C.F.R. § 404.1545(1)). The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The court "may only scrutinize the record" and take into account whatever fairly detracts from the substantiality of the evidence supporting the ALJ's decision. *Leggett*, 67 F.3d at 564.

Plaintiff first suggests that the ALJ's RFC assessment limiting Plaintiff to frequent bilateral handling and fingering is inherently inconsistent with his step 2 finding of severe carpal

6

tunnel syndrome. (R. Doc. 18 at 4). The Court does not agree. The consideration of whether a claimant's impairments are severe is a different inquiry than the assessment of a claimant's residual functional capacity. *See Boyd v. Apfel*, 239 F.3d 698, 706 (5th Cir. 2001); *Guiterrez v. Barnhart*, 2005 WL 1994289, at *9 (5th Cir. 2005) ("A claimant is not entitled to social security disability benefits merely upon a showing that she has a severe disability. Rather, the disability must make it so the claimant cannot work to entitle the claimant to disability benefits."); *Nelson v. Astrue*, 2013 WL 625726, at *7 (N.D. Tex. Jan. 30, 2013) (affirming ALJ's decision finding a severe impairment of chronic lower back pain but the residual functional capacity to perform work at all exertional levels with no postural limitations).

Frequent handling and fingering means it "exists from 1/3 to 2/3 of the time," as noted in the description of a position as a cashier, one of the jobs the VE testified was available to a hypothetical person assessed with the same RFC as Plaintiff. *See* DICOT 211.462-010 Cashier II (G.P.O.), 1991 WL 671840 (Jan. 1, 2016). A limitation to frequent, or 1/3 to 2/3 of the time, is a finding that a claimant has less than a full ability to perform that particular activity. Here, the ALJ limited Plaintiff to only frequent handling and fingering in his RFC assessment after finding at step 2 that Plaintiff suffered from a severe impairment of bilateral carpal tunnel syndrome. These two findings are not internally consistent, and Plaintiff's argument otherwise is without merit. The question then becomes whether substantial evidence supports the ALJ's RFC finding that Plaintiff retained the ability for frequent handling and fingering despite her severe carpal tunnel syndrome.

Substantial evidence supports the ALJ's decision finding that Plaintiff's severe carpal tunnel syndrome limited her to only frequent handling and fingering. Plaintiff filed her application for Social Security benefits on September 3, 2014, alleging disability as of August

7

13, 2014 due to vision problems, neuropathy, high blood pressure, diabetes, and high cholesterol. (Tr. 141). A May 14, 2015 visit with Dr. Bice of Comprehensive Pain Management is the first indication in the record of any reports or complaints of problems with her hands. In fact, Dr. Sefa, who referred Plaintiff to pain management on May 6, 2015, noted "feet, legs, and hip pain," as the reason for the referral, with no mention of problems with her hands. (Tr. 504). Dr. Bice noted that Plaintiff complained of "pain in lower back, arms, legs, hands." (Tr. 464). The remainder of the record from that visit makes no mention of Plaintiff's arms or hands, instead focusing on her legs and lower back, assessing lumbar/sacral/thoracic radiculopathy. (Tr. 466). Dr. Bice also scheduled a nerve conduction evaluation to determine neuropathy versus radiculopathy. (Tr. 467). A nerve conduction study was conducted on May 21, 2015, noting a history of numbness and tingling of hands. (Tr. 420). As a result of the nerve conduction study, Plaintiff was referred to an orthopedist based on a finding of bilateral severe carpal tunnel syndrome, the first diagnosis in the objective medical records dealing with Plaintiff's hands. (Tr. 420).

At her in-person interview on September 3, 2014, Plaintiff reported no difficulty with using her hands or writing. (Tr. 138). In her Adult Function Report dated October 1, 2014, when asked how her illnesses, injuries, or conditions limit her ability to work, Plaintiff makes no mention of her hands, only reporting issues with her vision and her lower extremities. (Tr. 163). She reports that she does the laundry and cleaning, limiting those activities to when her "feet let [her]." (Tr. 165). In the check-the-box section of her Adult Function Report, Plaintiff indicated that she has problems lifting, squatting, standing, walking, kneeling, stair climbing, seeing, and with memory and following instructions, but does not select reaching or using hands. (Tr. 168). Plaintiff had numerous appointments with Dr. Sefa during 2014 and early 2015, but there is no

8

mention in those records of Plaintiff reporting problems with her hands or complaining of any functional limitations involving her hands. Plaintiff testified at the administrative hearing that she stopped working as a beautician 10 or 15 years ago in part because "the carpal tunnel in my hands that were cramping up a lot, dropping stuff." (Tr. 32). This testimony is not corroborated by the objective medical evidence, however, because as noted above, there is no indication that Plaintiff had problems with her hands until May of 2015.

Plaintiff also argues that the ALJ failed to consider or discuss the factors listed in 20 C.F.R. §§ 404.1529(c) and 416.929(c), and that, because SSR 85-15 provides that reaching and handling are "activities required in almost all jobs," the ALJ's failure constitutes reversible error. (R. Doc. 18 at 5-6). 20 C.F.R. § 404.1529 and its counterpart at § 416.929(c) provide information regarding how the Administration evaluates a claimant's symptoms, including pain. In his decision, the ALJ cited 20 C.F.R. § 416.929(c), including a summary of the two-step process employed during the consideration of a claimant's symptoms. (Tr. 15). From there, the ALJ first highlighted relevant testimony from the administrative hearing, then compared that testimony with the objective medical records, ultimately concluding that Plaintiff's "statements concerning the intensity, persistence and limiting effects" of her symptoms were not entirely credible. (Tr. 16).

An ALJ "must articulate reasons for rejecting the claimant's subjective complaints of pain" only "when the evidence clearly favors the claimant." *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994) (citing *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1998)). Such is not the case here. As outlined more fully in the preceding paragraphs, and reviewed in detail in the ALJ's decision, there is very little evidence corroborating Plaintiff's complaints with regard to her hands, and to the contrary, substantial evidence exists supporting a finding that Plaintiff's

symptoms as to her hands had a mild effect on her residual functional capacity. The ALJ properly accounted for this conclusion when he reduced Plaintiff's ability for handling and fingering to frequent.

Furthermore, because the Court finds that substantial evidence supports the ALJ's finding that Plaintiff could perform frequent bilateral handling and fingering based on the evidence in the record independent of whether Plaintiff's severe bilateral carpal tunnel syndrome would be amenable to treatment, the Court need not address the propriety of the ALJ's finding that there was no reason to believe her impairment would not be amenable to treatment.

### B.    RFC – Stand/Walk Limitation

Plaintiff's second argument is that substantial evidence does not support the ALJ's finding that Plaintiff retained the residual functional capacity to stand and/or walk for up to 6 hours in an 8-hour workday. In support of this argument, Plaintiff suggests that the ALJ's failure to address alleged "flaws and/or incompleteness" in Dr. Medley's opinion necessitates a finding that the RFC assessment regarding Plaintiff's ability to stand and/or walk is unsupported by substantial evidence. (R. Doc. 18 at 8-10). The Commissioner responds that Plaintiff is incorrect in her assertion that the ALJ failed to address the existence of objective medical evidence that post-dated Dr. Medley's opinion, and that the Plaintiff's list of diagnoses she suggests the ALJ should have considered does not amount to functional consequences necessary for an RFC determination. (R. Doc. 22 at 11-12).

Dr. Medley, in his November 26, 2014 opinion, found that Plaintiff could stand and/or walk (with normal breaks) for about 6 hours in an 8-hour workday. (Tr. 66). The ALJ similarly concluded that Plaintiff retained the residual functional capacity to stand and/or walk 6 hours of an 8-hour workday. (Tr. 15). The similar conclusions do not necessitate a conclusion that the

ALJ simply followed Dr. Medley's opinion despite objective medical evidence that post-dated that opinion. Rather, the ALJ's decision reveals that he did consider the post-November 26, 2014 objective medical evidence, and found a similar RFC based upon the entirety of the record.

To begin, the ALJ put only partial weight on Dr. Medley's opinion, agreeing that Plaintiff was found to be restricted from activities requiring binocular vision. (Tr. 20). The ALJ then assessed a "light work" residual functional capacity, as opposed to Dr. Medley's finding that Plaintiff could perform medium work, a reduction "based on subsequent evidence received at the hearing level." (Tr. 20). The ALJ also explicitly reviewed and discussed the post-November 2014 medical records. (Tr. 17-19).

More specifically, Plaintiff makes reference to 8 "highly relevant medical records generated" after Dr. Medley's opinion. (R. Doc. 18 at 8-9). Upon the Court's review of the Plaintiff's list, compared with the ALJ's decision, it is clear that the ALJ specifically considered each of the findings listed in his RFC analysis.[2] That Dr. Medley's November 26, 2014 opinion does not account for these records is of little concern, given the fact that the ALJ considered all of them in his RFC analysis.

---

[2] Plaintiff's Item Nos. (1) and (2) are addressed by the ALJ wherein he cites to Exhibit 15F regarding the "EMG/nerve conduction studies of the upper extremities on May 22, 2015" and the "EMG/nerve conduction studies of the lower extremities on June 2, 2015, [indicating] mild sensorimotor neuropathy with no clear evidence of lumbosacral radiculopathy." (Tr. 18-19, citing Tr. 485-488, a duplicate of Tr. 420-23 cited by Plaintiff). Plaintiff's Item No. (3) is addressed by the ALJ wherein he cites Exhibit 14F, stating "[t]he most probable diagnosis was said to be plantar fasciitis with diabetic polyneuropathy, tendinitis, and lower extremity edema," and notes that the "treatment plan consisted of changing shoe gear and orthotic counseling." (Tr. 18). Tr. 455 does not reflect a positive straight leg raising test on the right side as Plaintiff's Item No. (4) suggests, but the ALJ addressed the asymptomatic straight leg test on in May 2015 (Tr. 466), and the positive straight leg test on the right side in July 2015 (Tr. 458). (Tr. 18, 19). Plaintiff's Item No. (5) was discussed by the ALJ wherein he again cites Exhibit 15F and notes that, in a July 7, 2015 follow-up appointment with pain management the "diagnostic assessment was diabetic polyneuropathy and chronic pain syndrome." (Tr. 19). Plaintiff Item No. (6) was addressed by the ALJ wherein he noted that the June 10, 2015 "diagnostic assessment included lumbosacral spondylosis without myelopathy, lumbosacral/thoracic radiculopathy, diabetic polyneuropathy, and chronic pain syndrome. (Tr. 19; Tr. 462). Plaintiff's Item No. (7) was addressed by the ALJ wherein he notes that Plaintiff "complained of numbness and cramps in her legs which had not improved with Depakote." (Tr. 18; Tr. 464). Lastly, Plaintiff's Item No. (8), the results of a June 9, 2015 MRI, were addressed by the ALJ wherein he states the MRI "indicated disc bulging at L2-3, L3-4, and L4-5 without focal disc protrusion or canal stenosis." (Tr. 19; Tr. 480).

11

Furthermore, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff retained the residual functional capacity to stand and/or walk for 6 hours in an 8-hour workday. Plaintiff testified that, on a good day and despite limitations, she can get up in the morning and "do for [herself]," put on clothes, get out of the tub, fold clothes and start a meal, clean and straighten the house before the kids get home, she goes to church and attends some of her children's activities, goes out to eat once or twice a month, and visits with her mother. (Tr. 46-52). She also testified that bad days occur four or five days in a month. (Tr. 45). In her Adult Function Report, Plaintiff reports no problem with bathing, caring for her hair, shaving, feeding herself, using the toilet. (Tr. 164). She states that she can do the laundry and cleaning, including sweeping and some mopping, though notes it takes her until her kids come home. (Tr. 165).

A treating physician, Dr. Sefa, repeatedly notes diagnoses of primarily diabetes, hypertension, and neuropathy, but aside from a June 23, 2014 complaint of weight loss, weakness, and fatigue, there is no indication of resultant functional limitations in his records. (Tr. 236, 219, 222, 223, 226, 231, 232, 237, 242, 243, 247, 251). In her November 24, 2014 Case Analysis, Dr. Smith recommended referral of the case to Dr. Medley for a more thorough ophthalmology review, noting significant diabetic retinopathy, but found that Plaintiff was "otherwise doing well and medically managing her other medical issues." (Tr. 267). Plaintiff reported pain in her legs and back at a June 2, 2015 appointment with neurology, and Dr. LeBourgeois found mild sensorimotor neuropathy affecting the lower extremities with no clear evidence for a lumbosacral radiculopathy. (Tr. 422-23). Dr. Le corresponded with Dr. Sefa on March 30, 2015, after an appointment with Plaintiff at the Foot & Ankle Institute, noting Plaintiff complained of "pain greatest over the plantar aspect of the bilateral arch." (Tr. 455). Dr. Le communicated findings of plantar fasciitis, diabetes, difficulty walking, equinus, edema,

inflammation, pain and tendonitis, and recommended various testing and only a change in shoe gear and night splints. (Tr. 455).

In forms completed in June and July of 2015 at Comprehensive Pain Management LLC, Plaintiff reports pain on a scale of 8 out of 10, identifying her hands, feet, hip, and lower back. (Tr. 508, 510). The record completed by Dr. Bice from the corresponding June 10, 2015 visit indicates complaints of pain in both hands, lower back, and lower leg, and notes that when pain is present, it interferes with most, but not all, daily activities. (Tr. 461).[3] Plaintiff was reported to have a normal gait and negative straight leg raise bilaterally despite increased lumbar pain with facet loading and tenderness in her right lumbar area. (Tr. 462). At her July 7, 2015 visit with Dr. Bice at Comprehensive Pain Management, she complained only of lower back pain, and was noted to have a mildly ataxic gait, able to walk on her heels but not her toes, and a positive straight leg raising test on the right only. (Tr. 459).

While substantial evidence supports the ALJ's findings with regard to diagnoses of neuropathy and degenerative disc disease of the lumbar spine, both of which have the *potential* to impact Plaintiff's ability to stand and/or walk, substantial evidence also supports the ALJ's finding that Plaintiff could stand and/or walk up to 6 hours in an 8-hour workday, particularly in the relative absence of records of functional limitations in standing and/or walking. Plaintiff suggests that "[w]hat is missing… is a specific medical source statement supporting the ALJ's statement that plaintiff has the capability of standing and/or walking 6 hours out of an 8 hour workday." (R. Doc. 18 at 10). However, it is the Plaintiff's burden through step 4 of the sequential evaluation process. Although there is some evidence of difficulty with standing and/or walking, the Court finds that the ALJ properly accounted for this when he reduced her capacity

---

[3] Relevant to this indication is Plaintiff's testimony, noted previously, wherein she states that bad days are only four or five days a month. (Tr. 45).

to stand and/or walk to 6 hours of an 8-hour workday. In the absence of evidence of any further functional limitations attributable to Plaintiff's conditions that might affect her ability to stand and/or walk, the Court does not conclude that these medical records demanded a more restrictive RFC finding or caused the ALJ's opinion to be insufficiently supported. The ALJ's decision will not be overturned on this ground.

## V. CONCLUSION

For the reasons given above, **IT IS ORDERED** that the Commissioner's decision is **AFFIRMED** and Plaintiff's appeal **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on March 27, 2019.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**